**Rose M. SMITH, Appellant,**

v.

**Richard SCHWEIKER, Secretary of the Dept. of Health and Human Services.**

No. 81–2062.

United States Court of Appeals, Third Circuit.

Argued Jan. 11, 1982.

Decided March 5, 1982.

Barry Michael Simpson (argued), Brennan, Robins & Daley, Pittsburgh, Pa., for appellant.

Thomas A. Dougherty, Jr. (argued), Philadelphia, Pa., for Dept. of Health and Human Services.

Before HUNTER and HIGGINBOTHAM, Circuit Judges, and ACKERMAN,* District Judge.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge.

1. Rose Mary Smith, a widow, applied for disability benefits pursuant to 42 U.S.C. § 402(e)(1)(B)(ii) (1976). The only issue concerning her entitlement to disability benefits is whether her medical condition constitutes a disability within the meaning of the Social Security Act, 42 U.S.C. §§ 423(d)(1)(A), (d)(2)(B) (1976) (the "Act"). The Secretary of the Department of Health and Human Services ("Secretary") found that it did not. His determination was affirmed by a United States Magistrate and by the district court.

2. The question on appeal is whether there exists in the record, taken as a whole, substantial evidence to support the Secretary's findings. For the reasons discussed below we conclude that there is not. We will vacate the judgment of the district court, therefore, and remand this case to the Secretary for further proceedings consistent with our opinion.

### I. Applicable Law

3. Under section 423 of the Social Security Act the test for establishing entitlement to disability benefits is more stringent for widows, widowers and divor-

---

* Honorable Harold A. Ackerman, United States District Judge for the District of New Jersey, sitting by designation.

cees than for the other class of beneficiaries, wage earners.[1] To be "disabled" under the Act, a widow must be incapable of performing *any* gainful employment. 42 U.S.C. § 423(d)(2)(B) (emphasis added). Furthermore, her inability to work must be based solely upon medical considerations. 20 C.F.R. § 404.1577 (1981).[2] A wage earner, by comparison, need only show that his impairment prevents him from performing any *substantial* gainful activity, which can be established based upon such non-medical factors as age, education and work experience. 42 U.S.C. § 423(d)(2)(A) (1976) (emphasis added). *See Rodriguez v. Secretary of Health and Human Services,* 647 F.2d 218 (1st Cir. 1981); *Grimes v. Secretary of HEW,* 433 F.Supp. 1063 (E.D.Pa.1977), *aff'd without opinion,* 577 F.2d 726 (3d Cir. 1978).

4. For a widow to prove that she is unable to perform any gainful activity, her impairment must be one of those set forth in the Listing of Impairments, 20 C.F.R., Subpart P, Appendix 1, or it must be the medical equivalent of a listed impairment. 20 C.F.R. § 404.1578(a)(1). *See also* 20 C.F.R. § 404.1525(a). Medical equivalence is determined by comparing the symptoms, signs and laboratory findings about the claimant's condition with the medical criteria of the listed impairments. 20 C.F.R. § 404.1526(a). If the claimant's impairment is not listed in the Appendix, medical equivalence is determined by comparing the claimant's impairment with the listed impairment most like it. *Id.* A claimant's impairments, each of which, treated individually, would not constitute a disability, may also be considered in combination to determine whether, taken together, they do constitute a disability. *Id.*

## II. The Evidence Before the ALJ

5. The medical evidence Mrs. Smith introduced at the hearing before the ALJ established that during the past decade she has been beset by several painful, chronic illnesses. These illnesses include: degenerative disc disease of the cervical spine, degenerative arthritis, osteoarthritis of the lumbosacral spine, peptic ulcer disease, a comminuted fracture of the left humerus and osteoporosis.[3] Her arthritis and degenerative disc disease restrict movement in her neck and lower back. She underwent a laminectomy and surgical removal of a ruptured disc to treat these conditions, but she still experiences neck and back pain. Her arthritis continues to worsen; she has recently developed a spur on her right foot. Her doctor advises against surgery, because it would only have to be repeated at a later time.

6. Mrs. Smith underwent a surgical vagotomy and a pyloroplasty in 1978 to treat her peptic ulcer disease. Her ulcer, however, continues to cause her difficulty, preventing her from taking her arthritis and pain medication.

7. In 1979, Mrs. Smith broke her left arm in seven places and exacerbated her back condition when she fell through a garage roof. Her arm was in a cast for over four months. She continues to wear an arm brace at night.

8. According to her testimony at the hearing, Mrs. Smith's impairments are the source of continual pain and severely restrict her activity. She testified that the pain in her head, neck, back, hands and ankles prevents her from sleeping at night, or from washing or combing her hair. She

---

1. No party has raised the question of whether the different treatment accorded these two classes of beneficiaries constitutes a violation of the claimant's constitutional right to equal protection, and we do not reach it.

2. Shortly after this case was heard by the ALJ, the regulations pertaining to disability claims were rewritten and renumbered to "make them easier to read and understand." 45 Fed.Reg. 55566, 55566 (Aug. 20, 1980). The new regulations are now codified in the C.F.R. Because

no substantive changes were made in the regulations that apply to this case, we will cite to the revised regulations throughout this opinion. *See Rodriguez v. Sec'y of Health & Human Services,* 647 F.2d 218, 220 n.3 (1st Cir. 1981).

3. The ALJ erroneously stated that there was no evidence that Mrs. Smith had osteoporosis. Record at 12. The record contains an X-ray report that included a finding of osteoporosis. Record at 122.

is unable to sew or crochet. She can no longer do any gardening, cooking or housekeeping. Because her neck movement is restricted, her doctor has advised her not to drive.

9. Mrs. Smith's testimony was corroborated by her daughter, who lives with her. The disabling nature of Mrs. Smith's impairments was also attested to by her attending physicians, including her family physician, who was of the opinion that she was totally disabled.[4] However, a medical consultant, Dr. Gillis, who was appointed by the Secretary, was of the opinion that none of Mrs. Smith's illnesses taken alone constituted a disability as defined by the Listing of Impairments. As is permitted by regulation, Dr. Gillis based his opinion solely on the medical record; he did not examine Mrs. Smith. 20 C.F.R. § 404.1526(b).

10. The ALJ, relying solely on the report of Dr. Gillis, and rejecting all other evidence, found that Mrs. Smith's ailments in combination did not disable her.

### III. Discussion

11. This court's standard of review is whether there exists substantial evidence in the record to support the Secretary's findings. 42 U.S.C. § 405(g). Under this standard, the question is whether the record contains "such relevant evidence as a rea-

sonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938). *See also Lewis v. Califano*, 616 F.2d 73, 76 (3d Cir. 1980); *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). Upon review we conclude that the findings in this case are not supported by substantial evidence for two reasons. First, the ALJ assessed the available evidence improperly, giving undue weight to the report of Dr. Gillis. Second, the ALJ appears not to have considered Mrs. Smith's pain when he found that, viewed in combination, her impairments were not disabling.

12. In his decision, the ALJ treated the report of the medical consultant Dr. Gillis as conclusive and as unrebutted by the other evidence.[5] The ALJ never stated why he disregarded the medical reports of Mrs. Smith's doctors.

■ 13. It is undisputed that the Secretary is entitled to rely upon the opinions of medical consultants when assessing the medical claims of a claimant. Nothing in the statute or the regulations, however, establishes a presumption that a consultant's advisory report is to be treated as conclusive.[6] It has been frequently held that the

---

4. The record contains the medical reports of Mrs. Smith's attending physicians, Dr. Baseline, who is her family physician, and Dr. Cottington, who treated her for her fracture. Both physicians believe she is totally disabled. Record at 143–44.

The record also contains medical evaluation forms completed by four other physicians, Dr. Ripepi, Dr. DiCuccio, Dr. Wilson and Dr. Susen, who treated Mrs. Smith at various times. (Dr. Baseline also completed a medical evaluation report.) These forms, which are supplied by the Secretary, do not expressly ask the physician to venture an opinion about whether the claimant is disabled and none of the doctors in this case did so. Their reports, however, fully corroborate Mrs. Smith's testimony. Dr. Wilson, for example, doubted if Mrs. Smith's arthritis and disc disease could be improved by physical therapy or by other rehabilitative treatment. Record at 111.

5. The ALJ said:

The combination of all claimant's impairments were considered by Dr. R. Gillis. . . . Dr. Gillis concluded that the combination of the claimant's impairments do not meet or equal the level of severity described in the Listing of Impairments. As the claimant has failed to establish additional evidence which would cast doubt upon the determination of equivalency by Dr. Gillis, the Administrative Law Judge finds no cause to disregard such determination.

Record at 12.

It is to be noted that Dr. Gillis' report stated that none of Mrs. Smith's ailments *taken alone* constituted a disability. The ALJ, however, concluded from Dr. Gillis' report that the *combination* of Mrs. Smith's ailments was not disabling.

6. The Act gives the Secretary the responsibility to promulgate regulations defining when a widow's medical impairment is severe enough to preclude her from engaging in any gainful ac-

advisory report of a medical consultant who does not examine the claimant may constitute substantial evidence to grant or deny a claim, see *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), but that the report itself deserves little weight in the overall evaluation of the testimony. *Thorne v. Califano*, 607 F.2d 218, 219 (8th Cir. 1979); *Allen v. Weinberger*, 551 F.2d 781, 786 (7th Cir. 1977). *See Rodriguez v. Secretary of Health and Human Services*, 647 F.2d at 223–24 (1st Cir. 1981). The question of how much weight to give to a consultant's report, therefore, must be determined by the circumstances of the particular case. *Rodriguez*, 647 F.2d at 223–24. Here, the ALJ simply gave the consultant's report an irrebuttable weight, and stated no reasons for his action. We therefore have no means of evaluating the correctness of his conclusion.

14. Another consideration that the ALJ must bear in mind while evaluating the evidence is that, while the test for determining entitlement to disability benefits may be different for widows than for wage earners, *see* text at note 1 *supra*, the process of evaluating the evidence of a claimant's medical impairment is not. Thus, as we have held in the context of a wage earner's disability claim, the ALJ may not ignore conflicting evidence; he must instead explain his reasons for rejecting it. *Cotter v. Harris*, 642 F.2d 700, 706–07 (3d Cir. 1981). The ALJ in this case never explained why he rejected all the evidence of the many doctors who had examined Mrs. Smith, in favor of a written report from one doctor who had never even seen her.

15. Our second reason for rejecting the finding of the Secretary is that the ALJ appears not to have factored Mrs. Smith's pain into the equation when he found that the combination of her impairments did not constitute a disability. The ALJ stated in his opinion that he relied on the report of Dr. Gillis to reach the conclusion that the combination of Mrs. Smith's impairments was not disabling. *See* note 5, *supra*. The record clearly shows, however, that Dr. Gillis did not consider Mrs. Smith's pain when forming his opinion. Record at 52–53.

16. We have held that pain in itself may be a disabling condition. *Smith v. Harris*, 644 F.2d 985, 988 (3d Cir. 1981); *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974), *cert. denied*, 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975). The Secretary argues, however, that pain may not constitute a disability for a widow, because pain is not one of the conditions included in the Listing of Impairments. We do not need to reach this issue because, as the Secretary's counsel conceded at oral argument, pain is a symptom of a medical impairment. The regulations provide that symptoms must be considered when deciding whether a widow's impairment is, or is the equivalent of, a listed impairment. *See* 20 C.F.R. §§ 404.-1528(a), 404.1526(a). Mrs. Smith's pain clearly constitutes a symptom under the regulations.[7] Accordingly, her pain should have been considered when deciding whether the combination of her impairments was severe enough to be disabling.

## CONCLUSION

17. For the foregoing reasons, we conclude that the finding of the Secretary that Mrs. Smith is not disabled is not supported by substantial evidence. The opinion of the medical consultant, Dr. Gillis, was improperly presumed to be conclusive and the ALJ failed to explain his reasons for rejecting conflicting testimony. Finally, pain is a symptom of Mrs. Smith's various medical

---

tivity. 42 U.S.C. § 423(d)(2)(B). The regulation that authorizes the use of medical consultants merely states "[W]e will also *consider* the medical opinion given by one or more physicians designated by the Secretary in deciding medical equivalence." 20 C.F.R. § 404.1526(b) (emphasis added).

7. A symptom is defined as "your own description of your physical or mental impairment." 20 C.F.R. § 404.1528(a).

From our reading of the regulations it would appear that pain may also be classified as a "sign," whenever it can be demonstrated by medically acceptable clinical diagnostic techniques. *See* 20 C.F.R. § 404.1528(b).

impairments that should have been considered when determining whether the combination of her impairments is as severe as or is the equivalent of impairments contained in the Listing of Impairments.

18. We will vacate the judgment of the district court and remand this case to the district court with directions to remand it to the Secretary for further proceedings consistent with this opinion.