**Michael EVOSEVICH, Petitioner,**

**v.**

**CONSOLIDATION COAL COMPANY and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

**No. 85–3451.**

United States Court of Appeals, Third Circuit.

Submitted Under Rule 12(6) March 7, 1986.

Decided May 5, 1986.

Rehearing and Rehearing En Banc Denied June 9, 1986.

Lawrence R. Chaban, Yablonski, Costello & Leckie, Washington, Pa., for petitioner.

Douglas A. Smoot, Jackson, Kelly, Holt & O'Farrell, Charleston, W.Va., for Consolidation Coal Co.

Brian E. Peters, Office of the Solicitor, U.S. Dept. of Labor, Washington, D.C., for Director, Office of Workers' Compensation.

Before GIBBONS, BECKER, and RO-SENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This petition for review of a decision denying black lung benefits [1] presents two questions, the first of which is whether the report of a non-examining physician based solely on a review of medical records is admissible over a hearsay objection in an administrative hearing. The second, and more difficult, question is whether the Administrative Law Judge (ALJ) erred in the weight he accorded the medical opinion of the non-examining physician hired by an adverse party. The ALJ denied Michael Evosevich's claim for benefits, concluding that the opinions of two doctors hired by the Consolidation Coal Company (the Company), which opposed awarding benefits, had greater probative worth than the opinions of Evosevich's treating physician and a labor department doctor. Only one of the Company's doctors examined Evose-

vich. The Benefit Review Board (BRB) affirmed the ALJ's decision.

We disagree with Evosevich's contention that the report of a non-examining physician is inadmissible hearsay. After reviewing the record as a whole, we conclude that substantial evidence supports the ALJ's decision, and deny Evosevich's petition for review.

### I.

Evosevich worked in coal mines for 47 years before retiring at age 63. All his jobs were underground. For the last 10 years of his career he worked for the Company, which as the responsible operator under 20 C.F.R. § 725.493 (1985) is the respondent in this action. He had an excellent employment record, often working six or seven days a week with few absences. Following his retirement, which he attributes in part to shortness of breath, Evosevich filed a claim under the Black Lung Benefits Act, 30 U.S.C. §§ 901–960 (1982) (the Act).

Evosevich previously had been examined by several doctors in connection with various medical problems, including a congenital chest deformity (pectus excavatum), a hernia repair, and bladder cancer. Reports of these examinations, as well as of examinations performed to evaluate the merit of Evosevich's claim under the Act, were submitted for consideration to an ALJ. The ALJ also heard testimony from Evosevich, but none of the doctors testified.

Pursuant to statute, 30 U.S.C. § 921 (1982), the Department of Labor has promulgated regulations establishing interim rebuttable presumptions of total disability. A miner who worked at least 10 years in a coal mine is presumed to be totally disabled by pneumoconiosis and entitled to benefits under the Act if one of four requirements is met: (1) a chest x-ray, biopsy, or autopsy establishes the condition; (2) ventilatory studies establish the presence of a chronic respiratory disease as numerically defined;

---

1. This court has jurisdiction to review the petition under 30 U.S.C. § 932(a) (1982), incorpo-

rating 33 U.S.C. § 921(c) (1982).

(3) blood gas studies reveal impairment of the flow of oxygen, again as numerically defined; or (4) other medical evidence, including the documented reasoned opinion of a doctor, establishes the presence of a totally disabling respiratory impairment. 20 C.F.R. § 727.203(a)(1)–(4) (1985).

After reviewing the evidence, the ALJ concluded and on appeal the Company concedes that Evosevich qualified for the interim presumption on the basis of the ventilatory studies and reasoned doctors' opinions concluding that he suffered a totally disabling respiratory impairment. Evosevich submitted to four ventilatory studies. For a man his height, an FEV–1 under 2.4 and a MVV under 96 qualify for the ventilatory presumption. In three recorded tests, Evosevich's FEV–1 ranged from 1.75 to 1.86 and his MVV from 45 to 72, all qualifying values. Although the values of a fourth test are not reported, the ALJ found they also qualified. Despite conflicting medical opinions,[2] the ALJ found that two doctors' reasoned medical opinions supported invoking the interim presumption. Evosevich did not qualify for the interim presumption on the basis of chest x-rays because the readings were conflicting, with negative readings of the most recent x-rays by the most qualified doctors. Evosevich was tested twice for the blood gas presumption and did not qualify either time.

Two experts hired by the Company, Dr. C.L. Anderson and Dr. George O. Kress, submitted reports concluding that Evosevich had chronic bronchitis and mild obstructive lung disease, caused by his conge-nital chest deformity and his former pack-a-day cigarette habit, that he had at most mild pneumoconiosis, and that he was not disabled from performing his usual work. Dr. Anderson based his report on his personal examination of Evosevich and on negative readings of x-rays apparently performed and read by Dr. Paul Francke, also retained by the Company. Dr. Kress did not examine Evosevich, and based his conclusions on the hospital and other medical records, Dr. Anderson's report, previous x-ray readings, and his own reading of the latest x-rays of record. Dr. Francke and Dr. Kress are both certified "B" readers.[3]

Dr. Thomas E. Morgan submitted a report detailing Evosevich's medical history. Dr. Morgan, a general practitioner who has been Evosevich's family physician for more than 25 years, stated that in the 10 years preceding his retirement Evosevich "began to develop a progressive shortness of breach and a chronic cough," and that breathing problems prevented him from climbing stairs, walking up an incline, or walking further than 100 yards. He also reported that Evosevich's performance on a pulmonary function study and chest x-rays supported his diagnosis. The results of these studies qualify for the interim presumption of pneumoconiosis disability. He concluded that "this patient is totally and permanently disabled for any further employment ... [as] the result of his exposure to heavy concentrations of coal dust as an underground coal miner for over 45 years."

Dr. John Martin examined Evosevich on behalf of the United States Department of

---

**2.** The Director, Officer of Workers' Compensation Programs, United States Department of Labor, who is a party to all actions under the Act, 30 U.S.C. § 932(k) (1982), contends that the ALJ erred in granting the interim presumption on the basis of medical opinions without first weighing the conflicting opinions. *See Consolidation Coal v. Sanati*, 713 F.2d 480, 481 (4th Cir.1983), *overruled, Stapleton v. Westmoreland Coal Co.*, 785 F.2d 424 (4th Cir.1986) (in banc) (per curiam, with plurality opinions). In light of the conclusion we reach and the Company's concession of the presumption issue, we do not address the propriety of the presumptions here invoked.

**3.** A "B" reader has passed an examination of the National Institute for Occupational Safety and Health, and is deemed more qualified than someone who has not passed the exam to interpret x-rays for pneumoconiosis. 42 C.F.R. § 37.51; *see Pavesi v. Director*, 758 F.2d 956, 958 n. 1 (3d Cir.1985). An ALJ may rationally prefer the opinion of a "B" reader over a non-"B" reader. Another "B" reader, Dr. W.J. McMahon, examined two x-rays of Evosevich as part of his hospital treatment and concluded that one showed qualifying signs of pneumoconiosis. He also performed another x-ray, about seven months later, and found "[n]o pulmonary or pleural abnormality."

Labor and also concluded that he is totally disabled due to pneumoconiosis. Dr. Martin's reasoning was consistent with Dr. Morgan's. He found that Evosevich's breathing problem limited him to walking no more than 50 feet or one flight of steps each day and prevented him from lifting or carrying anything. He stated that "[p]art of [Evosevich's] dyspnea could be due to cigarette smoking as well, but in my estimation less than 50%." Dr. Martin also relied on ventilatory study results, which, like those performed by Dr. Morgan, were qualifying for the interim presumption of pneumoconiosis. In interpreting the ventilatory study, however, he stated that Evosevich's reduced FVC was "compatible with *mild* restrictive impairment" and his markedly reduced MVV "could be due to either pulmonary or *non-pulmonary* causes." (Emphasis added.)

Dr. Morgan and three board-certified radiologists, all of whom are not "B" readers, read various x-rays of Evosevich with values that qualify for the interim presumption of pneumoconiosis disability. Dr. McMahon, a "B" reader, also concluded that one of two x-rays register values that qualify for the interim presumption. *See supra* note 3. Two ventilatory studies were performed after Dr. Morgan and Dr. Martin wrote their reports, and both qualify for the interim presumption of pneumoconiosis and are consistent with the earlier studies. The evidence on which Dr. Morgan relied did not include a blood gas test, a matter Dr. Anderson and Dr. Kress found significant in Evosevich's non-qualifying results.

Dr. Martin, Dr. Morgan, Dr. Anderson, and Dr. Kress were all aware of Evosevich's chest deformity and his smoking habit.

An interim presumption of total disability can be rebutted by evidence establishing any one of the following:

(1) The individual is, in fact, doing his usual coal mine work or comparable and gainful work;

(2) The individual is able to do his usual coal mine work or comparable and gainful work; or

(3) The total disability or death of the miner did not arise in whole or in part out of coal mine employment; or

(4) The miner does not, or did not, have pneumoconiosis.

*See* C.F.R. § 727.203(b)(1)–(4) (1985). The ALJ held that the reports of Dr. Anderson and Dr. Kress were sufficient to establish rebuttal on all but the first of these grounds. With one exception,[4] Evosevich does not dispute that these reports, if credited, establish: that he was not disabled from doing his usual coal mine work or comparable employment; that any respiratory impairment he suffers resulted from his smoking and his chest deformity, not coal mining; and that despite the positive ventilatory studies and the inconclusive x-ray readings, he did not have pneumoconiosis. Instead, he argues that Dr. Kress' report as a non-examining physician constituted inadmissible hearsay or, at the least, should not have been given substantial weight.

The ALJ gave less weight to the contrary reports of Dr. Morgan and Dr. Martin. He noted that Dr. Morgan's report was written more than a year before the reports of Dr. Anderson and Dr. Kress, and in that time Evosevich submitted to several blood gas tests and x-ray readings that supported the negative conclusions of the later reports. Apparently, the ALJ discredited Dr. Martin's report as tentative and contradictory. Although Dr. Martin

---

**4.** Evosevich does contend in passing that neither report categorically ruled out the possibility that *any* chronic dust disease led to his respiratory impairment, as required by section 727.-203(b)(3) ("total disability ... did not arise ... out of coal mine employment"). Dr. Anderson stated that he believed Evosevich's respiratory problems did not arise from an "industrially related process," which he later restated as "industrial bronchitis." Dr. Kress similarly concluded that any breathing difficulty was not the result of any "environmental exposure." We believe these remarks, read in context, were intended to cover any coal dust related ailments.

concluded that Evosevich was totally disabled by pneumoconiosis and chronic obstructive lung disease, he interpreted a ventilatory study result as showing only "mild restrictive impairment" and said that other reduced test values "could be due to either pulmonary or non-pulmonary causes."

Evosevich made a timely objection at the hearing before the ALJ to the admission of Dr. Kress' report, and renewed the objection before the BRB. The ALJ after hearing argument denied the objection, and the BRB sustained the denial. In his opinion, the ALJ did not comment on how the hearsay nature and non-examining aspect of Dr. Kress' report might affect its probative worth. The BRB, however, stated that the opinion of a non-examining physician could constitute substantial evidence for rebuttal purposes.

### II.

The applicable regulations, in setting out the grounds for rebuttal of an interim presumption, state that "[i]n adjudicating a claim under this subpart, all relevant medical evidence shall be considered." 20 C.F.R. § 727.203(b) (1985). A related provision provides that an ALJ under the Act "shall not be bound by common law or statutory rules of evidence." 20 C.F.R. § 725.455(b) (1985).

■ These regulations are consistent with the scope of admissible evidence provided for by statute in another part of the Act, which states that "[i]n determining the validity of claims under this part, all relevant evidence shall be considered." 30 U.S.C. § 923(b) (1982). This court has determined that admissible evidence under the part of the Act at issue here is also constrained only by its relevancy. *Republic Steel Corp. v. Leonard*, 635 F.2d 206, 209 (3d Cir.1980). The procedural principles of the Administrative Procedure Act, 5 U.S.C. §§ 551–559 (1982), and the Social Security Act, 42 U.S.C. § 301 *et seq.* (1982), have been incorporated under the Act. *Id.* Under all these statutes, hearsay is "admissible up to the point of relevancy." *Rich-*

*ardson v. Perales*, 402 U.S. 389, 410, 91 S.Ct. 1420, 1431, 28 L.Ed.2d 842 (1971). *See generally* 3 K. Davis, *Administrative Law Treatise* § 16 (1980).

■ The Supreme Court in *Perales* and this court in *Republic Steel* conflated the questions whether medical reports were admissible and whether they could constitute substantial evidence. Neither case doubts, however, that hearsay evidence is freely admissible in administrative proceedings. *See* 402 U.S. at 400, 91 S.Ct. at 1426; 635 F.2d at 208. In fact, hearsay reports of non-testifying doctors constituted all the medical evidence submitted to the ALJ in this case, by both the claimant and the Company. The ALJ did not err in admitting Dr. Kress' report over Evosevich's objection.

### III.

Evosevich also contends that having admitted the opinion of a non-examining physician retained by one of the parties, the ALJ erred in giving substantial weight to it, and that if Dr. Kress' opinion were accorded its proper weight, the ALJ's decision would not be supported by substantial evidence.

The Act provides that the BRB is bound by an ALJ's factual findings if they are supported by substantial evidence. 30 U.S.C. § 932(a) (1982), incorporating 33 U.S.C. § 921(c) (1982). This court in turn applies the substantial evidence standard in reviewing the ALJ's decision. *Kertesz v. Crescent Hills Coal Co.*, 788 F.2d 158, 162 (3d Cir. 1986).

■ Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Perales*, 402 U.S. at 401, 91 S.Ct. at 1427. Because the Black Lung Benefits Act is to be liberally construed to assure widespread benefits to miners disabled by black lung disease, "the party opposing an award of benefits must point to persuasive evidence" to rebut an interim presumption of disability. *Pavesi v. Director, Office of Workers' Compensation*

*Programs,* 758 F.2d 956, 964–65 (3d Cir. 1985).

The Supreme Court in *Perales,* a social security disability case, held that the written report of an examining physician retained by a federal agency, "despite its hearsay character and an absence of cross-examination, and despite the presence of opposing direct medical testimony and testimony by the claimant himself, may constitute substantial evidence supportive of a finding ... adverse to the claimant." 402 U.S. at 402, 91 S.Ct. at 1428.[5] This court in *Republic Steel,* a black lung case, relied heavily on *Perales* and followed a similar analysis to conclude that written medical reports of examining physicians are admissible and may provide substantial evidence in proceedings under the Act. 635 F.2d at 209. The court stated that "the same goals of reliability and probative value relied on by the Court in *Perales*" were present: "independent examining medical professionals," the inherent reliability of medical reports of examinations, the burden on proceedings under the Act if testimony were mandatory, and the opportunity for subpoena and cross-examination. *Id.*[6]

Evosevich argues that many of the factors suggesting that the report of an independent examining physician has sufficient probative worth to constitute substantial evidence do not apply to Dr. Kress' report. Unlike the physicians in *Perales* and *Republic Steel,* Dr. Kress: (1) was hired by the Company, not the adjudicating agency; (2) knew that the Company desired a particular adversarial result; (3) never examined Evosevich; (4) commented generally on his medical condition; and (5) reached a conclusion contrary to both the claimant's doctor and the physician retained by the independent agency. Although Evosevich, like the claimants in *Perales* and *Republic Steel,* could have subpoenaed and cross-examined the non-appearing doctor, he argues that the unfulfilled potential for cross-examination does not increase the credibility of an opinion.

Without addressing the reasoning of *Perales,* courts considering black lung cases generally have stated that the opinions of a claimant's treating physician and of all physicians who examine the claimant are to be given greater deference than those of non-examining physicians. *Collins v. Secretary of Health and Human Services,* 734 F.2d 1177, 1179–80 (6th Cir.1984); *see Sexton v. Director, Office of Workers' Compensation Programs,* 752 F.2d 213, 215–16 (6th Cir.1985) (interpretations of x-rays incorporated into the reports of examining physicians are given greater weight than those of non-examining physicians). As a matter of law, a non-examining physician's opinion on a subject not addressed by examining physicians cannot constitute substantial evidence in rebuttal. *Bethlehem Mines Corp. v. Massey,* 736 F.2d 120, 124–25 (4th Cir.1984) (rejecting as insubstantial Dr. Kress' opinion, as a non-examining expert, that a miner's smoking, undiscussed

---

**5.** The Court in so holding noted nine factors that "assure underlying reliability and probative value," *id.:* (1) three of the five physicians were retained by an independent agency unconcerned with the proceeding's outcome; (2) the federal agency's vastness and non-adversarial role "make for reliability and impartiality in the consultant reports"; (3) the doctors had all independently examined the claimant; (4) the examinations were by specialists in various related fields; (5) all five doctors reached the same conclusions; (6) the claimant could have subpoenaed and cross-examined the doctors; (7) written medical reports of examinations are often admissible even in court; (8) "the decisions ... demonstrate traditional and ready acceptance of the written medical report in social security disability cases"; and (9) live medical testimony at hearings, where unnecessary,

would drain limited administrative resources. 402 U.S. at 402–06, 91 S.Ct. at 1427–30.

**6.** In *United States Pipe & Foundry Co. v. Webb,* 595 F.2d 264, 270 (5th Cir.1979), in which *Republic Steel* relied, the report of an *examining* doctor was admitted as possessing probative worth similar to that of the medical reports in *Perales.* More recently, in *Consolidation Coal Co. v. Chubb,* 741 F.2d 968, 972–73 (7th Cir. 1984), the court referred to the *Perales* factors in holding that an x-ray reading contrary to the company's interest and included in its own doctor's report, without any attempt by the company to contradict it with subsequent contrary reports, "was sufficiently probative and trustworthy to be admissible and to constitute substantial evidence."

by examining doctors, caused his respiratory problems).

Curiously, we find that courts have rarely discussed the effect factors considered in *Perales* have on the weight to be granted the opinion of a non-examining medical expert in the black lung context. The question has often been discussed by courts in social security cases, however, and as noted above the same procedural principles that govern social security cases are applied in black lung proceedings. *Republic Steel*, 635 F.2d at 208–09.

Several courts have held that the reasoning of *Perales* does not extend to the weight given the reports of *non-examining* physicians. In holding that the opinion of a non-examining physician, on its own, cannot be substantial evidence, the Court of Appeals for the Fourth Circuit "f[oun]d significance in Mr. Justice Blackmun's repeated references [as author of *Perales*] to the fact that the medical reports in question—admissible even though hearsay—were the product of a medical examination of the claimant." *Martin v. Secretary of Department of Health, Education and Welfare*, 492 F.2d 905, 909 (4th Cir.1974) (footnote omitted). Confronted with the same problem, the Court of Appeals for the First Circuit reasoned:

> [W]e face a very different situation from *Perales*. [The doctor] here neither examined the claimant nor testified at the hearing. His report thus lacks the assurance of reliability that comes on the one hand from first-hand observation and professional examination or, on the other, from first-hand testimony subject to claimant's cross-examination. It is hearsay based on hearsay. Thus, although the report may be admissible in light of *Perales*, it cannot be the substantial evidence needed to support a finding.

*Browne v. Richardson*, 468 F.2d 1003, 1006 (1st Cir.1972).

This court has also addressed the weight to be given an opinion of a non-examining physician, concluding that although in some circumstances the report of a non-examining physician may constitute substantial evidence to grant or deny a claim, generally such a report "deserves little weight in the overall evaluation of the testimony." *Smith v. Schweiker*, 671 F.2d 789, 792–93 (3d Cir.1982). In *Rodriguez v. Secretary of Health & Human Services*, 647 F.2d 218 (1st Cir.1981), cited with approval in *Smith*, the court explained that while "the fact that the experts have neither examined nor testified lessens the probative power of their reports," various factors may "militate in favor of according their reports some evidentiary value." *Id.* at 224. Significantly in *Rodriguez*, for instance, the experts received extensive documentation containing relevant information, they were highly qualified, they reviewed the record, and they confined themselves to expressing an opinion on the basis of the clinical reports before them. *Id.* These factors all support giving credence to Dr. Kress' report in the present case. On the other hand, as noted in *Thorne v. Califano*, 607 F.2d 218, 219 (8th Cir.1979), also cited approvingly in *Smith*, the opinion of a non-examining expert by itself probably cannot constitute substantial evidence to contradict the opinions of examining physicians.

■ In the present case, the ALJ apparently gave considerable weight to Dr. Kress' opinion as corroboration for Dr. Anderson's opinion. Doubtless, if we see merit in the ALJ's reasons for discounting the opinions of Dr. Morgan and Dr. Martin, Dr. Anderson's opinion by itself would be sufficient to constitute substantial evidence rebutting the interim presumption of disability. Dr. Anderson is a highly qualified medical expert, he examined the claimant, he reviewed the hospital records and other clinical and medical reports, and he made a detailed analytical report. Other courts have held that opinions of non-examining physicians may corroborate those of examining physicians and form part of the substantial evidence defeating contrary opinions. *See e.g., Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir.1984). Although the point is unsettled elsewhere, *see Garrison v. Heckler*, 765 F.2d 710, 715 & n. 3 (7th

Cir.1985) (following *Gordon* while noting split in circuits), consistent with our decision in *Smith* we hold that the opinion of a non-examining physician in a black lung case may in some circumstances have probative worth supporting substantial evidence.

 Dr. Kress' report consists of a reasoned interpretation of medical evidence gathered by various examining physicians and the treating hospital. Evosevich does not contend that Dr. Kress is unqualified or that he ignored or misrepresented any significant information, and Dr. Kress' reasoning is consistent with the detailed report of Dr. Anderson. The ALJ noted that Dr. Kress had not examined Evosevich, and used Dr. Kress' report for the limited purpose of corroborating Dr. Anderson. Although the ALJ discussed Dr. Kress' opinion at length, he did not note any way in which the opinion was different from and more persuasive than Dr. Anderson's. Nor was Dr. Kress' opinion the basis for the ALJ's decision to give less weight to the opinions of Dr. Morgan and Dr. Martin. The ALJ reached his decision on the weight to be given their opinions on the basis of the inconsistencies and weaknesses in their reports.

The ALJ attached less probative value to Dr. Morgan's report because "he did not have the benefit of later valid tests and studies" considered by Dr. Anderson and Dr. Kress. This new information would appear to consist of Evosevich's negative performance on a blood gas test and the contrary negative readings of various x-rays. Whether these later x-ray readings and blood gas test would have altered Dr. Morgan's conclusions we cannot say. If they would, the ALJ would not have needed to weigh the conflicting evidence. The ALJ discounted Dr. Martin's report because his remarks on an accompanying ventilatory study appeared inconsistent with his conclusion of total disability.

Constrained as we are by the limitations of review under a substantial evidence standard, we cannot say that the ALJ's reasons for discounting the opinions of Dr.

Morgan and Dr. Martin are as a matter of law unmeritorious. We conclude that in these circumstances the ALJ did not err in the weight he accorded Dr. Kress' opinion as a non-examining physician.

## IV.

Although on its facts this may be a close case, we conclude upon reviewing the record as a whole that the ALJ's decision is supported by substantial evidence. Accordingly, we will deny the claimant's petition for review.