Helen HILLIBUSH, Widow of Edward Hillibush, Deceased, Petitioner,

v.

**U.S. DEPARTMENT OF LABOR, BENEFITS REVIEW BOARD,** Respondent.

No. 88-3023.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) June 24, 1988.

Decided Aug. 1, 1988.

Thomas K. Noonan, Thomas K. Noonan Law Offices, Mahoney City, Pa., for petitioner.

Before GIBBONS, Chief Judge, HIGGINBOTHAM, Circuit Judge, and ROTH, District Judge.[*]

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

The petitioner, Helen Hillibush, appeals from a decision of the Department of Labor's Benefits Review Board ("the Board") affirming an administrative law judge's denial of her benefits under § 21(c) of the Longshoremen's and Harbor Workers' Compensation Act of 1927, 33 U.S.C. § 921(c) (1982), as incorporated by § 422(a) of the Black Lung Benefits Act, 30 U.S.C. § 932(a) (1982). The respondent, the Director of the Department of Labor's Office of Workers' Compensation Programs ("OWCP") seeks a remand of this case to the Board. This Court has jurisdiction to review the Board's decision, as the claimant in this case is the widow of a miner whose injury occurred in the Commonwealth of Pennsylvania. 33 U.S.C. § 921(c) (1982). We will vacate the decision of the Benefits Review Board and remand this case for further proceedings.

### I.

On March 27, 1981, Helen Hillibush filed for survivor's benefits under the Black Lung Benefits Act of 1977, 30 U.S.C. §§ 901–945 (1982). The Department of Labor administratively denied the claim on August 10, 1981. Mrs. Hillibush then requested a formal hearing, which was held on March 7, 1985 in Pottsville, Pennsylvania before an administrative law judge (ALJ).

Mrs. Hillibush presented evidence to the administrative law judge consisting of her own testimony and five affidavits. Her testimony recounted her husband, Edward Hillibush's deteriorating condition in the

years before his death. She stated that in his last years he could not perform jobs around the house. App. at 21. He would handle emergency jobs, but the longer he worked at them the more difficult his breathing became. App. at 21. He took his time climbing stairs and breathed heavily when he reached the top. App. at 22. He went from a man "very versed in woodworking ... remodeling, plumbing" (App. at 21), who was able to handle "enormous jobs" (App. at 22) to someone for whom major effort was required to take a walk around a shopping mall or climb up one flight of stairs. App. at 22–23. He coughed up "horrible black stuff." App. at 22. The miner coughed often. He did not renew his hunting and fishing licenses a year before his death because he did not feel he could do the walking. App. at 23. Mrs. Hillibush also testified that her husband avoided walking when possible, but he never complained to her of shortness of breath because he kept his health problems to himself. App. at 26.

Mrs. Hillibush testified that the miner worked as a welder and mechanic in coal mine employment until 1969 and that he last worked for F & E Erection Company as a welder. App. at 18, 26–28. She believed that the physical requirements of his coal mine employment were great, and she observed dusty conditions in his workplace. App. at 18–19. She did not know that her husband was ever given lighter duties while working in the coal mines, but she stated that 18 months before he died he told her that a co-worker complained that he did not do as much as the other men. App. at 20–21, 28.

Donald Bernosky's affidavit consisted of a letter to Hillibush's attorney in which he stated that he had worked with Edward Hillibush in several jobs from 1971 through 1979. App. at 14. He described the miner as coming to need help even on routine tasks, and stated that Mr. Hillibush's condition grew progressively worse to the point

---

[*] Honorable Jane R. Roth, United States District Judge for the District of Delaware, sitting by designation.

that he would ask for assistance rather than move heavy equipment on his own. He preferred to work in the open air "where the smoke dissipated more quickly," and he openly wondered whether he would make it to retirement. App. at 14.

David Hillibush, the miner's son, also wrote a letter concerning his father's health. App. at 11–12. Although his father never complained to him of weakness or shortness of breath, David wrote that it was obvious that he could no longer perform daily tasks. David had to do most of the odd jobs around the house because physical exertion left his father exhausted and short of breath. David noted that if the miner did attempt any work around the house, he would have to take breaks periodically. David also worked with his father in construction jobs for F & E Construction and Kimbob, Inc., and he noticed that his father needed help moving and setting up equipment and was too exhausted to drive home at the end of the day. *Id.*

Samuel Jones signed an affidavit in which he stated that he was a foreman for the F & E Erection Company and he supervised the miner in 1980. App. at 16. During his brief period of supervision of the miner, Jones observed that Mr. Hillibush "coughed quite a bit and seemed awfully short of breath," tired quickly and was unable to perform many tasks without difficulty. *Id.*

John Verbash, a Kimbob, Inc. foreman, stated in an affidavit that he supervised Edward Hillibush from December 1978 until early 1980. App. at 15. He listed the miner's duties as including the fueling of equipment, light mechanical work, welding, and maintenance lighting facilities. He remembered Mr. Hillibush as being short of breath and finding difficulty "in walking up even a slight hill or even attempting to do any kind of heavy work." *Id.* Sometimes the miner seemed so tired that Verbash would let him ride in his truck while he went about his own duties, or he would perform the miner's heavier tasks for him.

He noted that the miner was usually exhausted at the end of a shift and offered his belief that the miner should not have been working at all. The miner once told Verbash that if he (Verbash) had not covered for him, he "never would have been able to hold the job." *Id.*

John Huth, a co-worker of Mr. Hillibush, wrote that the miner needed progressively more help in his job. App. at 13. He stated that the miner had to ask for help in lifting or moving equipment and that he could no longer work independently.

On April 10, 1985, the ALJ issued a decision and order denying Mrs. Hillibush benefits on the grounds that she had failed to establish that her miner husband had pneumoconiosis or was totally disabled due to it. Since claimant filed for benefits before January 1, 1982, *see* 30 U.S.C. § 921 (1982), the ALJ applied the federal regulations at 20 C.F.R. § 718.201–307 (1987) (Determining Entitlement to Benefits; Presumptions Applicable to Eligibility Determinations).[1] The ALJ found that the miner had worked in coal mines for at least 18 years ending in 1969 and that thereafter he worked as a welder in the construction industry until his death from heart failure on October 30, 1980. App. at 30–31.

In denying benefits, the ALJ reached three conclusions, that the record did not support a finding that (1) the miner had pneumoconiosis, (2) that he was totally disabled from pneumoconiosis or a respiratory disease, or (3) that he died from a respiratory disease. *Id.*

With respect to the lack of indications of pneumoconiosis or other respiratory disease, the ALJ relied on the death certificate. He noted that the death certificate listed cardiac arrest as the cause of death, and made no mention of any other contributing causes. He also found relevant that the miner was working until the time of his death. The ALJ further found that the lay evidence—the claimant's testimony and supporting affidavits—was insufficient to establish pneumoconiosis because "[w]hile

---

1. 20 C.F.R. § 725.4(a) (1987) makes 20 C.F.R. § 718 applicable to claims filed after March 31, 1980.

[it] shows that the deceased miner was short of breath and had a chronic cough while alive, the record is clear that he worked to the date of his demise." App. at 31.

The ALJ adduced these same factors to conclude that even if he had a respiratory disease, it was not totally disabling. The ALJ stated that the affidavits did not clearly indicate that the miner suffered from a respiratory problem and that "in any event the death certificate constitutes 'other relevant evidence' within the meaning of [§ 718.305(b)], and [it] merely indicates that the miner died as a result of cardiac arrest and not as a result of any respiratory problems." *Id.* He therefore concluded that Mrs. Hillibush was not entitled to the presumption afforded by 20 C.F.R. § 718.305(b) (1987) [2] that her husband had suffered from a totally disabling respiratory or pulmonary impairment.

With respect to the cause of the miner's death, the ALJ found that the death certificate was conclusive evidence that pneumoconiosis had not played a role. Concluding that Hillibush had not sustained her burden of proof, he denied benefits.

Mrs. Hillibush then appealed to the Benefits Review Board, arguing that the ALJ erred in not invoking the § 718.305(b) presumption because his finding that the miner's death certificate constituted "other relevant evidence" was incorrect and because the lay testimony clearly established that the miner had a totally disabling respiratory impairment. She argued that the Board should reverse the ALJ's decision.

The Director of the Office of Workers' Compensation Programs ("the Director"), Mrs. Hillibush's administrative adversary before the ALJ, in response to Hillibush's appeal moved to remand the case to the ALJ. The Director argued that the ALJ had not made all the factual findings required before a determination whether total disability has been proven under § 718.305. In particular, the Director argued that the ALJ had failed to make a finding pursuant to § 718.305(c) [3], requiring application of § 718.204(b) [4], regarding the nature of the miner's usual coal mine work and whether the lay evidence established an inability to do such work.

Mrs. Hillibush answered this motion by maintaining her position that reversal was proper, but argued in the alternative that remand for the reasons given by the Director was appropriate.

The Board did not rule on the Director's motion. It simply affirmed the ALJ's finding that the lay evidence was insufficient to establish total disability, on the grounds that the ALJ's decision was supported by substantial evidence and was within the ALJ's discretion. It therefore upheld the denial of benefits.

## II.

On appeal from the Board's decision, Hillibush argues that the ALJ's finding that her husband did not have pneumoconiosis was not supported by substantial evidence. She contends that the lay evidence she presented is sufficient to establish her husband's disease. Mrs. Hillibush further argues that a death certificate including no

---

2. This regulation states:
   (b) In the case of a deceased miner, where there is no medical or other relevant evidence, affidavits of persons having knowledge of the miner's condition shall be considered to be sufficient to establish the existence of a totally disabling respiratory or pulmonary impairment for purposes of this section.
   20 C.F.R. § 718.305(b) (1987).

3. This regulation provides:
   (c) The determination of the existence of a totally disabling respiratory or pulmonary impairment, for purposes of applying the presumption described in [§ 718.305(b)], shall be made in accordance with § 718.204.

20 C.F.R. § 718.305(c) (1987).

4. This regulation provides in pertinent part:
   (b) ... [A] miner shall be considered totally disabled if pneumoconiosis as defined in § 718.201 prevents or prevented the miner:
     (1) From performing his or her usual coal mine work; and
     (2) From engaging in gainful employment in the immediate area of his or her residence requiring the skills or abilities comparable to those of any employment in a mine or mines in which he or she previously engaged with some regularity over a substantial period of time.
   20 C.F.R. § 718.204(b) (1987).

more information than that the cause of death was cardiac arrest is not "other relevant evidence" within the meaning of § 718.305(b), and that therefore the ALJ erred in using the death certificate as evidence that her husband had not suffered from a totally disabling respiratory or pulmonary impairment. Finally, Hillibush argues that the ALJ's determination that because the miner worked until his death he did not have a totally disabling respiratory disease was erroneous, because: a) the evidence concerning the miner's work is relevant only to rebuttal, not in determining the presence of the disease; b) the ALJ wrongly put the burden of proof with respect to continued employment on the claimant rather than on the Director; and c) the ALJ wrongly evaluated the evidence and failed to provide any rationale for that evaluation. Accordingly, Mrs. Hillibush requests that we reverse the Board's decision and remand the case for the award of benefits. In the alternative, she requests that we remand the case to the ALJ for reevaluation of the evidence in light of the applicable regulations.

The Director makes somewhat similar arguments in support of his renewed request that we remand this case to the ALJ for reconsideration of the lay evidence. The Director's fundamental position is that the ALJ erroneously failed to consider all the lay evidence of record in this case. Specifically, the Director argues, in concert with Hillibush, that the ALJ erred in finding that the miner's death certificate constituted "other relevant evidence" under § 718.305(b). According to the Director, a miner's death certificate giving cardiac arrest as the cause of death may not be used as conclusive evidence of the absence of respiratory condition.

The Director also contends that the ALJ's factual determinations do not support his conclusion that even if the pre-

sumption of respiratory disease applied, Mr. Hillibush's condition was not totally disabling. The ALJ determined that the miner's continued employment was conclusive evidence that he was not totally disabled and therefore the presumption of pneumoconiosis under § 718.305(b) could not be invoked. The Director argues that the fact that a miner continued to be employed does not, by itself, constitute substantial evidence of the lack of total disability, but that two factual findings must underpin this determination. First, the Director points out that a miner is totally disabled under the regulations if he or she cannot perform his or her usual coal mine work. *See* 20 C.F.R. § 718.204(b)(1) (1987). Second, he contends that 20 C.F.R. § 718.204(e) (1987)[5], which states that continued coal mine employment shall not be conclusive evidence of the lack of total disability, also applies where the miner continues working outside the coal mines; the test of total disability remains whether the miner is able to perform his usual coal mine work. The Director argues that prior to rejecting the presumption of totally disabling respiratory impairment, the ALJ must both determine the nature of the miner's usual coal mine work and, having done so, consider whether the lay evidence of record provides sufficient basis for comparing the miner's physical limitation prior to his death with the requirements of his usual coal mine work. The Director thus contends that the ALJ, in failing to make either of the two required factual determinations and instead simply relying on the miner's employment at the time of his death to reject the presumption of total disability under § 718.305(b), both applied an incorrect legal standard and failed to fully consider the lay testimony of record.

As a second reason for asserting that substantial evidence is lacking on this

---

5. This regulation provides:
   (e) In determining total disability to perform usual coal mine work, the following shall apply in evaluating the miner's employment activities:
   (1) In the case of a deceased miner, employment in a mine at the time of death shall not be conclusive evidence that the miner was

not totally disabled. To disprove total disability, it must be shown that at the time the miner died, there were no changed circumstances of employment indicative of his or her reduced ability to perform his or her usual coal mine work.
20 C.F.R. § 718.204(e) (1987).

record, the Director argues that the ALJ failed to comply with the provision of the Administrative Procedure Act[6] ("the APA"), requiring that the ALJ accompany his decision with a statement of reasons on all material issues of fact and law. *See* 5 U.S.C. § 557(c)(3)(A) (1982).[7] The Director specifically contends that the ALJ did not address the five affidavits attesting to the miner's physical condition prior to his death and to his ability to work. The Director finally argues that because the ALJ did not make the necessary factual determination regarding the miner's usual coal mine work, as required by the APA, remand, as opposed to reversal, is required in this case.

### III.

Although the black lung benefits legislation does not set forth a standard of review for courts of appeals, we have established that "we review the decisions of [the Board] for error of law and to assure ourselves that it has adhered to the statutory scope of review." *Kertesz v. Crescent Hills Coal Co.*, 788 F.2d 158, 162 (3d Cir. 1986). We determined that "we must independently review the record 'and decide whether the ALJ's findings are supported by substantial evidence.'" *Id.* at 163, (quoting *Walker v. Universal Terminal & Stevedoring Corp.*, 645 F.2d 170, 172 (3d Cir.1981)).

In the case before us, Mrs. Hillibush's contentions before the Board and this Court are in part supported by the Director. We have stated that this Court owes the Board no special deference as it "is merely an adjudicatory tribunal, and Congress has conferred upon it no authority to make rules or formulate policy. 30 U.S.C. § 932(a) (incorporating by reference 33 U.S.C. § 921(b))." *Bethlehem Mines Corporation v. Director, Office of Workers' Compensation Programs, U.S. Department of Labor,* [hereinafter "Director, OWCP"] 766 F.2d 128, 130 (3d Cir.1985) (citing *Potomac Electric Co. v. Director, OWCP,* 449 U.S. 268, 278 n. 18, 101 S.Ct. 509, 514 n. 18, 66 L.Ed.2d 446 (1980)). The Supreme Court has held that by contrast, the Secretary of Labor's interpretation of black lung regulations is due substantial deference since the Secretary wrote the regulations. Therefore, the Secretary's interpretation should be upheld unless it is "plainly erroneous or inconsistent with the regulation." *Mullins Coal Co. v. Director, OWCP,* —— U.S. ——, 108 S.Ct. 427, 440, 98 L.Ed.2d 450 (1987). *See also Bethlehem Mines Corp.,* 766 F.2d at 130.

### A.

We must consider whether the ALJ's determination that a death certificate identifying cardiac arrest as the cause of death and making no reference to the condition of the lungs can be relied upon as "other relevant evidence" to preclude operation of the presumption of pneumoconiosis under 20 C.F.R. § 718.305(b). We must also determine whether the ALJ's alternative ruling that the fact that the miner worked until his death disproved the presumption of a totally disabling respiratory impairment. If the death certificate alone cannot be relied upon and if the ALJ erroneously interpreted the evidence that the miner worked until he died, the regulations do not permit the ALJ to conclude that the miner did not have a totally disabling respiratory impairment, since the presumption's remaining prerequisites, that the miner have worked at least fifteen years in a coal mine, *see* § 718.305(a)[8], and that there be

**6.** The requirements of the Administrative Procedure Act are made applicable to Department of Labor black lung adjudications by the Longshoremen's and Harbor Workers' Compensation Act. *See* 33 U.S.C. § 919(d) (1982) as incorporated by 30 U.S.C. § 932(a) (1982). *See also* 20 C.F.R. §§ 725.455(b) and 725.477(b) (1987).

**7.** This provision states in relevant part:
The record shall show the ruling on each finding, conclusion, or exception presented. All decisions, including initial, recommended, and tentative decisions, are a part of the record and shall include a statement of—
(A) findings and conclusions, and the reasons or basis therefore, on all the material issues of fact, law, or discretion presented on the record[.]

5 U.S.C. § 557(c)(3) (1982).

**8.** This rule provides in pertinent part:
(a) If a miner was employed for fifteen years or more in one or more underground coal mines, and if there is a chest x-ray submitted

no medical or other relevant evidence establishing pneumoconiosis or other respiratory disease, *see* § 718.305(b), are satisfied.

1.

■ The Director promulgated § 718.305(b) pursuant to his delegated authority under Section 413(b) of the Black Lung Benefits Reform Act.[9] The corresponding section of the statute provides in relevant part:

> In determining the validity of claims under this part, all relevant evidence shall be considered, including where relevant, medical tests such as blood gas studies, X-ray examination, electrocardiogram, pulmonary function studies, or physical performance tests, and any medical history, evidence submitted by the claimant's physician, or his wife's affidavits, and in the case of a deceased miner, other appropriate affidavits of persons with knowledge of the miner's physical condition, *and other supportive materials.* Where there is no medical or *other relevant evidence* in the case of a deceased miner, such affidavits ... shall be considered to be sufficient to establish that the miner was totally disabled due to pneumoconiosis or that his or her death was due to pneumoconiosis.

30 U.S.C. § 923(b) (1982). We are persuaded that the meaning of § 718.305(b), when read in conjunction with the statute, is that while a widow is entitled to present medical and other relevant evidence to support her assertion that a presumption of disease is appropriate, she may rely on lay affidavits alone if that evidence is by itself insufficient to establish the presumption. Section 413(b) of the Act concerns the es-

tablishment of entitlement to benefits, not the rebuttal of a presumption of a totally disabling respiratory disease. It specifically uses the word "supportive" to describe the purpose of the widow's submissions. It would be turning this provision of the statute on its head to say that evidence that is merely insufficient to support a finding of diseased lungs can be used to preclude her from presenting the lay evidence provided for by the statute. The Congressional intent in amending 30 U.S.C. § 923(b) in 1977 is clear.

The House Report on the 1977 Amendments noted that the Amendments to Section 413(b) [30 U.S.C. § 923(b)] were designed to address:

> "the dilemma of survivors who, because of the absence of any relevant medical evidence regarding the physical condition of deceased miners cannot establish the validity of an otherwise valid claim. In most cases, the miner died many years ago, and such evidence has been lost or destroyed by the miner's physician, or is otherwise non-existent."

*Dempsey v. Director, OWCP,* 811 F.2d 1154, 1159 (7th Cir.1987) (quoting H.R.Rep. No. 151, 95th Cong., 1st Sess. 19–20 (1977), U.S.Code Cong. & Admin.News 1978, pp. 237, 255–256).

This reading of the statute is supported by the Seventh Circuit's holding in *Dempsey v. Director, OWCP,* 811 F.2d 1154, 1160 (7th Cir.1987)[10]. That case states that a claimant who does not have medical evidence sufficient to invoke the presumption of pneumoconiosis may rely on affidavits to establish the presumption and that in order for evidence to be sufficient, it must be relevant to the disability. The

---

in connection with such miner's or his or her survivor's claim and it is interpreted as negative with respect to the requirements of § 718.304, and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis, that such miner's death was due to pneumoconiosis' or that at the time of death such miner was totally disabled by pneumoconiosis.
20 C.F.R. § 718.305(a) (1987).

**9.** "Congress has delegated rule-making powers under the Black Lung Benefits Act to the Secre-

tary of Labor. 30 U.S.C. § 932(a). The Secretary has redelegated all his powers under the Act to the Director." *Bethlehem Mines Corp. v. Director, OWCP,* 766 F.2d 128, 130 (3d Cir.1985).

**10.** *Dempsey* involved a claim adjudicated under 20 C.F.R. § 727.203(a)(5) (1987). However, we agree with the Director that the standard applied under this section is equally applicable to § 718.305(b) since both regulatory provisions implement the same statutory provision, 30 U.S.C. § 923(b) (1982).

Benefits Review Board, however, rejects *Dempsey* 's reading of the use of medical evidence in the context of a presumption of pneumoconiosis. In *Gessner v. Director, OWCP*, 11 Black Lung Rep. 1-1, 1-3 (Ben. Rev.Bd.1988), the Board held that if the record contains *any* piece of medical evidence, even insufficient medical evidence, consideration of lay evidence to establish total disability is precluded. The Board purports to rely on *Coleman v. Director, OWCP*, 829 F.2d 3, 5 (6th Cir.1987), for this proposition. We are not persuaded by the Board's reasoning, however, since in *Coleman* the evidence in question, negative x-rays and other medical evidence showing clear lung fields, was not merely insufficient to establish the presence of lung disease, but was, in fact, an affirmative determination that no lung disease was present. *Id.* at 4. In *Gessner*, the evidence was a death certificate and a letter from a doctor, neither of which conclusively established the presence or absence of a totally disabling respiratory disease. *Id.* at 1–6. Moreover, the *Coleman* court approved *Dempsey* 's holding that the evidence must be relevant to the disability in order to preclude the use of affidavits and merely distinguished the case on its facts. For these reasons, the Board's rejection of the Director's interpretation of the statute and of § 718.305(b) does not persuade us that the Director's reading is plainly erroneous.

■ The remaining question is whether the death certificate in this case establishes conclusive evidence that no lung disease was present, or is merely insufficient to establish the existence of a totally disabling respiratory disease. The death certificate made no mention of the condition of the lungs, but simply noted cardiac arrest as the cause of death. The ALJ treated this notation as conclusive evidence that the miner did not have a totally disabling lung disease. In our view, however, the fact that the immediate cause of death was cardiac arrest does not preclude the possibility that the miner had a respiratory or pulmonary impairment; the two conditions are not inconsistent with each other. We have previously determined that a death certificate listing "coronary occlusion" and neither listing any other contributing conditions, not indicating that an autopsy or other physical examination had been made of the body, is inherently unreliable and does not constitute substantial evidence that the miner died of a coronary occlusion for the purposes of determining a widow's entitlement to black lung benefits. *See Smakula v. Weinberger*, 572 F.2d 127, 130–132 (3d Cir.1978).[11] In that case there was testimony that it is common practice, absent an autopsy, for coroners to enter coronary occlusion as the cause of death of miners. In this case there was no expert testimony on the practices of coroners; however, there is also no evidence that an autopsy was performed. We hold that in the absence of an autopsy, a death certificate may not be used to preclude invocation of presumption of a totally disabling respiratory or pulmonary impairment. Accordingly, we conclude that the ALJ erred in finding that the death certificate constitutes medical evidence or other relevant evidence under § 718.305(b) precluding invocation of the presumption of pneumoconiosis and the consideration of lay testimony presented by Hillibush. Furthermore, we conclude that the ALJ must consider the

**11.** While *Smakula* was decided under 20 C.F.R. §§ 410.410 410.430 (1977), pursuant to Section 411(a) of the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. § 921(a) (Supp. V, 1975), we see no logical reason why the reliability of a death certificate should be any greater because it is entered into evidence under a modified section of the black lung benefits law. Further, the Black Lung Benefits Reform Act of 1977, under which 20 C.F.R. § 718.305(b) (1987) was promulgated, was intended by Congress to make it easier for widows and miners to obtain benefits under the statute particularly by prohibiting denial of claims based solely on a negative chest roentgenogram, by presuming that miners who worked for at least 15 years in the mine and are disabled by a respiratory or pulmonary disease have pneumoconiosis, by permitting claims based on an inability to work in one's usual coal mine job, by providing for the use of additional relevant medical tests and by requiring evidence to establish eligibility for benefits. *See Morris v. Mathews*, 557 F.2d 563, 566–567 (6th Cir.1977). It would therefore be contrary to congressional intent for this Court to construe the later statute more narrowly than its predecessor.

lay evidence of record under § 718.305 to determine whether it establishes a totally disabling respiratory impairment.

2.

Although we hold that the lay testimony must be considered pursuant to § 718.305(b) in Mrs. Hillibush's case, the ALJ must still find that the miner was totally disabled under the criteria set forth in § 718.204 in order for Mrs. Hillibush to be entitled to benefits. *See* 20 C.F.R. § 718.305(c) (1987).[12] 20 C.F.R. § 718.204(c) (1987) provides five methods of establishing total disability. *See* § 718.204(c)(1)e–(5). Subsection (c)(5) provides, "[i]n a case involving a deceased miner in which the claim was filed prior to January 1, 1982, [and] where there is no medical or other relevant evidence, affidavits (or equivalent sworn testimony) from persons knowledgeable of the miner's physical condition shall be sufficient to establish total ... disability." 20 C.F.R. § 718.204(c)(5) (1987).[13] Lay evidence alone can be sufficient to support a finding that the miner was totally disabled due to a respiratory impairment in cases in which a survivor is claiming benefits. *See Rapier v. Secretary of HHS*, 808 F.2d 456, 458 (6th Cir.1986); *Dobbins v. Schweiker*, 641 F.2d 1354, 1358 (9th Cir.1981). In determining whether the lay evidence establishes a totally disabling respiratory disease, *see Rapier*, 808 F.2d at 458, the ALJ must consider all the relevant evidence of record before rejecting the presumption. *See Evosevich v. Consolidation Coal Co.*, 789 F.2d 1021, 1025 (3d Cir.1986) (interpreting 30 U.S.C. § 923(b) (1982), providing for consideration of all relevant evidence); *Miniard v. Califano*, 618 F.2d 405, 409–10 (6th Cir. 1980).

Section 718.204(b)(1) provides that a miner will be considered totally disabled if pneumoconiosis prevented him or her from performing his or her usual coal mine work. *Id.* 20 C.F.R. § 718.204(e) (1982) provides that when determining total disability in the case of a deceased miner, employment in a mine shall not be conclusive evidence that the miner was not totally disabled. *Id.*[14]

In rejecting the application of the presumption, the ALJ in this case limited his consideration of the evidence to an evaluation of its medical significance, stating that the lay evidence merely shows that Mr. Hillibush was short of breath and had a chronic cough while alive, and that the record is clear that he worked until the date of his death. *See* App. at 31. The ALJ did not consider the record evidence concerning the miner's usual coal mine work. Section 718.204(e)(1) states that evidence of continued coal mine employment may not be considered conclusive. Other courts have recognized that "[a]lthough physically weakened, miners often struggle on to support their families." *Dobbins v. Schweiker*, 641 F.2d 1354, 1359 (9th Cir. 1981) ("Human beings are frequently able to endure, through sheer willpower and necessity, when the disability is one of gradual debilitation, rather than a sharp high-impact blow to some part of the body."). We do not find plainly erroneous the Director's interpretation that the § 718.204(e)(1) prohibition also applies to non-coal mine employment, since the test

---

**12.** In holding that the presumption applies in this case, we are mindful of the regulation that states that "[i]n enacting Title IV of the Act, Congress intended that claimants be given the benefits of all reasonable doubt as to the existence of total or partial disability or death due to pneumoconiosis. [§ 718] shall be construed and applied in that spirit and is designed to reflect that intent. However, no claim shall be approved unless the record considered as a whole, in light of the applicable presumptions, provides a reasonable basis for determining that the criteria for eligibility under the Act and [§ 718] have been met." 20 C.F.R. § 718.3(c) (1987).

**13.** Subsections (c)(1)–(c)(4) of § 718.204 are not relevant in this case, since they provide for a finding of total disability by specific types of medical evidence, none of which is present in this record.

**14.** The statutory authority for this regulation, 30 U.S.C. § 901(f)(1)(B)(i) (1982) states:

"[A] deceased miner's employment in a mine at the time of death shall not be used as conclusive evidence that the miner was not totally disabled...." 30 U.S.C. § 901(f)(1)(B)(i) (1982).

disproving total disability will still require that "it ... be shown that at the time the miner died, there were no changed circumstances of employment indicative of his or her reduced ability to perform his or her usual coal mine work." 20 C.F.R. § 718.204(e)(1) (1987). We therefore conclude that the ALJ erred in determining that the presumption of § 718.305(b) could not apply to Mrs. Hillibush because her husband had worked until his death. We agree with the Director that this provision requires the ALJ to make a determination as to the miner's usual coal mine work, and then to consider whether the lay evidence of record provides a sufficient basis for comparing the miner's physical limitations prior to his death with the requirements of his usual coal mine work.[15] *See Kosack v. Director, OCWP,* 7 Black Lung Rep. 1–248, 1–251 (Ben.Rev.Bd.1984). As we have stated, Mrs. Hillibush presented five affidavits discussing her husband's work abilities, and she testified concerning his usual coal mine work. We conclude that the ALJ erred both in failing to make a determination of the nature of the miner's usual coal mine work and in failing to compare that work with his work at the time of his death. Absent these determinations, the ALJ gave inadequate consideration to material facts provided by the lay evidence.[16]

## 3.

■ We find further that the ALJ's failure to accompany his decision with a statement explaining whether § 718.204(b)(1) does not apply to the facts in this case violates the APA as well as the Black Lung Benefits Reform Act.[17] The need for a clear statement of the rationale underlying the ALJ's findings in black lung benefits cases is especially important, since the requirements of the statute are highly technical and factually based. *See Peabody Coal Co. v. Hale,* 771 F.2d 246, 249–50 (7th Cir. 1985); *see also Maxey v. Califano,* 598 F.2d 874, 876 (4th Cir.1979) (in black lung cases, ALJ's unexplained conclusion as to the length of the claimant's coal mine employment is of no use to reviewing court).

## IV.

We have held that the ALJ erroneously relied on the miner's death certificate and the fact that he was employed at the time of his death to avoid invoking the presumption of totally disabling respiratory disease which applied to Hillibush pursuant to 20 C.F.R. § 718.305(b) (1987), and that the

---

**15.** Mr. Hillibush was not performing coal mine work at the time of his death, but instead was working as a welder for F & E Erection Company. *See* App. at 26–28. The Director argues, and we agree, that the ALJ therefore cannot consider the work itself in making the comparison, but must compare his abilities in his most recent employment, as to which the affidavits supply evidence, *see e.g.* App. at 15, with the requirements of his usual coal mine work.

**16.** Although we agree that the ALJ may not use Mr. Hillibush's employment at the time of his death to preclude the consideration of lay evidence in determining whether the miner was totally disabled due to a respiratory impairment, we reject Mrs. Hillibush's claim that continued employment is relevant only to rebuttal of the presumption of pneumoconiosis. Section 718.305(d) provides that the presumption will be considered rebutted if the cause of death or total disability did not arise in whole or in part out of dust exposure in the miner's coal mine employment or the evidence establishes that the miner did not have pneumoconiosis. The miner's continued employment is not relevant to either of these two methods of rebuttal but rather to the issue of total disability which must be established as a prerequisite to invocation of

the presumption. Evidence relating to continued employment must therefore be considered before invoking the presumption. We need not address Mrs. Hillibush's further claim that the ALJ wrongly put the burden of proof on her to establish that her husband was totally disabled by a respiratory disease in light of his continued employment. We have determined that continued employment may not be used by itself to determine that a miner is not disabled. Since Mrs. Hillibush's claim may not be rejected solely on the basis of continued employment and her lay evidence may not be precluded, no burden can be placed on her to answer the employment issue in order to have her claim determined and her lay testimony considered.

**17.** The APA requirement of a statement of reasons accompanying all material findings of fact is emphasized by a regulation of the Secretary of Labor applicable to the Board, which states that "[a] decision and order shall contain a statement of the basis of the order ... findings of fact, conclusions of law and ... [a] paragraph containing the action of the administrative law judge." 20 C.F.R. § 725 (1987).

ALJ further erred by failing to consider and give a reasoned statement as to whether the miner was totally disabled under 20 C.F.R. § 718.204(b)(1) (1987). When an administrative law judge fails to make material factual findings, the proper course is remand for further consideration in light of the correct legal standards. *See Director, OWCP v. Rowe,* 710 F.2d 251, 255 (6th Cir.1983); *see also Caprini v. Director, OWCP,* 824 F.2d 283, 285 (3d Cir.1987). We will therefore vacate the Board's judgment and remand this case for further proceedings in light of this opinion.