861 F.2d 1321
 Irma POTHERING (Widow of Vincent Pothering), Respondent,
v.
PARKSON COAL COMPANY and Constitution State Service Co.,
Employer/Carrier, Petitioners,
and
Director, Office of Workers' Compensation Programs United
States Department of Labor, Party-in-Interest.
 No. 87-3854.
 United States Court of Appeals,
Third Circuit.
 Argued June 15, 1988.
Decided Nov. 23, 1988.
 
 Joseph A. McKenna (argued), Williamson, Friedberg and Jones, Pottsville, Pa., for employer/carrier, petitioners.
 Roscoe Bryant, III, Thomas Holzman, Michael Denney (argued), U.S. Dept. of Labor, Washington, D.C., for party-in-interest.
 Carolyn M. Marconis (argued), Law Offices of Charles A. Bressi, Jr., Pottsville, Pa., for respondent.
 Before MANSMANN, SCIRICA and COWEN, Circuit Judges.
 OPINION OF THE COURT
 SCIRICA, Circuit Judge.
 
 
 1
 Petitioners Parkson Coal Company and Constitution State Service Company[1] ("Parkson") appeal from a decision of the Benefits Review Board ("the Board") denying Parkson's motion for reconsideration of an order dismissing Parkson's appeal from an Administrative Law Judge's award of survivor's benefits under the Black Lung Benefits Act, 30 U.S.C. Secs. 901-45 (1982). We must determine whether the Board erred in ordering payment of a benefits award based upon Mr. Pothering's death due to pneumoconiosis, or "black lung disease."The principal issue raised by this appeal is whether an eligible survivor of a deceased miner who had filed a claim during his lifetime prior to 1982, the year the Act was amended, is required to file a new claim after the miner's death.
 
 
 2
 Under the Act, the dependent survivor of a deceased miner may be eligible for either of two types of survivor's benefits. The first type arises where a miner is totally disabled during his lifetime by pneumoconiosis. A dependent survivor of a totally disabled miner is derivatively entitled to the same disability benefits during her lifetime to which the miner would have been entitled during his lifetime. 30 U.S.C. Sec. 922. The second type is awarded where the miner in fact dies from pneumoconiosis. Id.
 
 
 3
 In 1981, the Act was substantially amended. The Act still provided, however, that:
 
 
 4
 In no case shall the eligible survivors of a miner who was determined to be eligible to receive benefits under [the Black Lung Benefits Act] at the time of his or her death be required to file a new claim for benefits, or refile or otherwise revalidate the claim of such miner, except with respect to a claim filed under this part on or after the effective date of the Black Lung Benefits Amendments of 1981.
 
 
 5
 30 U.S.C. Sec. 932(l) (1982), as amended by Black Lung Benefits Revenue Act of 1981, Pub.L. No. 97-119, Sec. 203(a)(6), 95 Stat. 1635, 1644 (1981).
 
 
 6
 We hold that Sec. 422(l) applies to both types of survivor's benefits and that an eligible survivor of a miner who filed a claim during his lifetime before January 1, 1982, the effective date of the 1981 amendments, need not file a new claim after the miner's death. We will affirm the decision of the Benefits Review Board.
 
 I.
 
 7
 Vincent Pothering worked in the coal mines of Pennsylvania for 17 years. On May 23, 1978, suffering from the black lung disease which would eventually cause his death, Mr. Pothering filed a claim for disability benefits under the Act. The Deputy Commissioner of OWCP issued a Notice of Initial Finding on May 16, 1980, informing Parkson that Mr. Pothering had been found totally disabled due to pneumoconiosis as of May 1978, that Mrs. Pothering was his eligible dependent, and that Parkson was the responsible operator. Parkson filed a timely controversion to the finding, the Deputy Commissioner affirmed her determination, and the matter was assigned to an Administrative Law Judge ("ALJ"). On January 24, 1984, at a hearing, the ALJ received exhibits but heard no testimony.
 
 
 8
 On April 20, 1984, while the matter was still pending before the ALJ, Mr. Pothering died. Mrs. Pothering notified the Department of his death and, on April 25, 1984, completed Form CM-1089 ("Survivor's Notification of Beneficiary's Death"). As a result, on August 21, 1984, the Deputy Commissioner notified Parkson of Mr. Pothering's death. The notice[2] recited the text of Sec. 422(l) and stated the following:
 
 
 9
 Based upon the available evidence, I find that the miner's survivor(s) satisfy the conditions set forth in 20 CFR 725.212 et seq.[3] It has been initially determined ... that the survivor(s) are eligible for benefits under the Act beginning with the month in which the miner's death occurred. Accordingly, you should begin payment of benefits within thirty (30) days of the date of this letter and, upon making the first payment, immediately complete and return the enclosed [forms] to this office. If both forms are not returned to this office, the survivor(s) claim will be joined with the deceased miner's claim for resolution of outstanding issues. If you wish to contest the initial determination, you must file a controversion ... with this office within thirty (30) days of the date of this notice.
 
 
 10
 App. at 20. Copies of this notice were sent to Mrs. Pothering, to Mr. Pothering's attorney, to Parkson, to Travelers Insurance Company, to the Office of ALJs, and to the Labor Department's Office of the Solicitor in Philadelphia--but not to counsel for Parkson. Parkson did not file a controversion in response to the August 21 notice.
 
 
 11
 Earlier, on August 15, 1984, the ALJ approved the parties' agreement to have the case decided on the record. In view of Mr. Pothering's death, the record was left open until September 25, 1984, to permit Parkson to depose Mrs. Pothering. The transcript of her deposition was submitted to the ALJ.
 
 
 12
 On December 12, 1984, the ALJ issued his Decision and Order. The ALJ explained that applying the regulations in 20 C.F.R. Sec. 727.203, together with the X-ray evidence, provided rebuttable presumptions that Mr. Pothering was totally disabled at the time of his death and that his death was due to pneumoconiosis.[4] He then found that while Parkson had rebutted the presumption of Mr. Pothering's total disability, it had not rebutted the presumption of death due to pneumoconiosis. Consequently, the ALJ awarded Mrs. Pothering survivor's benefits based upon the cause of Mr. Pothering's death.
 
 
 13
 Parkson appealed to the Board, which awarded Mrs. Pothering benefits on grounds other than those cited by the ALJ. In its decision, the Board held that under Sec. 422(l), Mrs. Pothering was not required to file a separate claim when her husband died. In light of that provision, the Board concluded that:
 
 
 14
 After careful review of the record, we find no evidence of a controversion filed by [Parkson] in response to the deputy commissioner's August 21, 1984 award of survivor benefits or of a challenge to the widow's status as an eligible survivor during the pendency of this case before the administrative law judge. We therefore hold that the deputy commissioner's August 21, 1984 survivor's award became final and remained at the deputy commissioner's level upon [Parkson's] failure to controvert the survivor's claim within thirty days.... [T]he administrative law judge never attained jurisdiction of the survivor's claim ...
 
 
 15
 (footnote omitted). App. at 55. The Board vacated the ALJ's order awarding benefits and remanded to the deputy commissioner "for payment of the award of benefits on the survivor's claim."[5] Id. Parkson filed a motion for reconsideration, which the Board denied. This appeal followed.
 
 II.
 
 16
 Parkson argues that the Board erred in holding that Mrs. Pothering's award became final when Parkson failed to controvert the Deputy Commissioner's August 21, 1984 notice. Specifically, Parkson maintains that the Board erred in deciding that Mrs. Pothering was not required to file a separate claim for survivor's benefits based on Mr. Pothering's death due to pneumoconiosis. Parkson also contends that its counsel of record was entitled to service of that notice and, because he received none, that the 30-day period for filing a controversion never began to run. In addition, Parkson argues that the ALJ adjudicated the claim for death due to pneumoconiosis under the improper standard--contending that because Mr. Pothering died in 1984, the ALJ should have applied the standards of 20 C.F.R. 718, which governs claims filed after March 31, 1980, rather than the standards of 20 C.F.R. 727. Finally, Parkson maintains that, in any event, the award was not based on substantial evidence. Parkson requests that we reverse the orders of both the Board and the ALJ; alternatively, it argues for a remand to the OWCP to permit the company to develop a controversion to the survivor's claim for death due to pneumoconiosis.
 
 
 17
 As a party-in-interest, the Director of the OWCP acknowledges that under Sec. 422(l), Mrs. Pothering was not required to file a separate claim for survivor's benefits based upon her husband's total disability at the time of death, but did have to file a separate claim for benefits based upon her husband's death due to pneumoconiosis. Consequently, the Director argues that since the record contained no separate claim for the latter type of benefits, the ALJ erred in making an award based upon death due to pneumoconiosis. Similarly, the Director maintains that the Board erred in holding that Parkson failed to controvert an award for death due to pneumoconiosis, because the August 21, 1984 letter from the deputy commissioner did not raise the issue. The Director requests that we reverse the orders of both the Board and the ALJ, and remand to the OWCP for development of a survivor's claim based upon the cause of Mr. Pothering's death.
 
 
 18
 For her part, Mrs. Pothering maintains that the Board's decision should be affirmed. She contends that she was not required to file a new survivor's claim asserting entitlement based upon her husband's death due to pneumoconiosis. Further, she argues that it was unnecessary to serve Parkson's attorney with notice of the August 21, 1984 determination; service to the company itself was sufficient. Finally, Mrs. Pothering argues that, even if the OWCP's August 21, 1984 determination did not become final upon Parkson's failure to file a controversion, the ALJ properly adjudicated her claim under 20 C.F.R. 727 because her eligibility for benefits derived from her husband's 1978 claim.
 
 
 19
 We review the Board's decision " 'for error of law and to assure ourselves that it has adhered to the statutory scope of review.' " Hillibush v. United States Dept. of Labor, 853 F.2d 197, 202, (3d Cir.1988) (quoting Kertesz v. Crescent Hills Coal Co., 788 F.2d 158, 162 (3d Cir.1986). Therefore, we may "independently review the record and decide whether the ALJ's findings are supported by substantial evidence." Id., 788 F.2d at 163 (quotations omitted). The Board " 'is merely an adjudicatory tribunal, and Congress has conferred upon it no authority to make rules or formulate policy. 30 U.S.C. Sec. 932(a) (incorporating by reference 33 U.S.C. Sec. 921(b)).' " Id. (quoting Bethlehem Mines Corp. v. Director, OWCP, 766 F.2d 128, 130 (3d Cir.1985) (citing Potomac Elec. Co. v. Director, OWCP, 449 U.S. 268, 278 n. 18, 101 S.Ct. 509, 514 n. 18, 66 L.Ed.2d 446 (1981))). Thus, the Board's (and the ALJ's) "interpretations of the statutes and regulations that control its decisions are 'not entitled to any special deference from the courts.' " Bethlehem Mines, 766 F.2d at 130 (quoting Potomac, 449 U.S. at 278 n. 18, 101 S.Ct. at 514 n. 18).
 
 III.
 
 20
 The effects of coal workers' pneumoconiosis, or black lung disease, have been well documented.[6] Congress responded to black lung disease, as well as to other mine safety problems, with the Federal Coal Mine Health and Safety Act of 1969, Pub.L. No. 91-173, 83 Stat. 742 (1969). In 1972, Congress amended the Act[7] to clarify its intent and to remove certain discretion from the administrative agencies. The Senate Report criticized the unacceptably high rate of denials nationwide, finding that the Act, as administered, did "not in fact benefit countless miners and their survivors who were the intended beneficiaries of the Black Lung Program." S.Rep. No. 743, 92nd Cong., 2d Sess. 3, reprinted in 1972 U.S. Code Cong. & Ad.News 2305, 2307; see also H.R.Rep. No. 151, 95th Cong., 2d Sess. 4, reprinted in 1978 U.S.Code Cong. & Ad.News 237, 240 (1972 amendments enacted "in large part because of dissatisfaction with the administration of the law by the Department of Health, Education, and Welfare ...which in some respects clearly contravened discernible legislative guidelines.").
 
 
 21
 In 1978 Congress again found it necessary to amend the Act.[8] As this Court previously observed:
 
 
 22
 The legislative history of the Black Lung Program demonstrates a clear pattern. Congress passed a statute intended to provide wide-spread benefits to miners disabled by black lung disease. The benefits, while never very high, were intended to be liberally awarded. Administrative practice, however, did not comport with legislative intent, and twice Congress was impelled to specify its intentions more clearly, "in order to insure as broad coverage as possible."
 
 
 23
 Echo v. Director, Office of Workers' Comp. P., 744 F.2d 327, 330 (3d Cir.1984), quoting S.Rep. No. 743, 92nd Cong., 2d Sess. 17.
 
 IV.
 A.
 
 24
 Against this background, we turn first to the question of whether Mrs. Pothering properly filed a claim with the Department of Labor for benefits based upon her husband's death due to pneumoconiosis. The Director, joined by Parkson, argues that she did not. Specifically, they contend that by filing a Form CM-1089, Mrs. Pothering merely lodged a claim to receive derivatively any disability benefits to which Mr. Pothering might have been entitled, and that she was required to file Form CM-912a in order to receive direct benefits for her husband's death due to pneumoconiosis. Additionally, because Mr. Pothering's death occurred in 1984, after the statute was amended, both the Director and Parkson contend that any adjudication of benefits for death due to pneumoconiosis should be under the regulations contained in 20 C.F.R. 718, rather than those in 20 C.F.R. 727.
 
 
 25
 As they existed after the 1978 amendments, the Act and the corresponding regulations contained a latticework of presumptions. These reflected Congress's intention, at least at the initial stages, not to impose a heavy burden of proof on claimants generally and widows in particular.[9] Thus, Sec. 411(c)(1) of the Act, 30 U.S.C. Sec. 921(c)(1) (1982), provided that if a miner worked in the mines for 10 or more years and developed pneumoconiosis, the disease was presumed to have arisen out of his coal mine employment; Sec. 411(c)(2) of the Act, 30 U.S.C. Sec. 921(c)(2) (1982), provided that if a deceased miner was employed for 10 or more years in coal mines and died from a respiratory disease, his death was presumed to be due to pneumoconiosis; and 20 C.F.R. 727.203 provided that a miner who worked in coal mines for 10 or more years would be presumed to have died from pneumoconiosis if he had pneumoconiosis at the time of death, or if medical evidence established the presence of a totally disabling respiratory impairment at the time of death, or even if a survivor could testify as to the miner's physical condition of having a totally disabling respiratory impairment at the time of death.
 
 
 26
 In 1981, Congress amended the Act again,[10] this time eliminating several presumptions, including Sec. 411(c)(2). Additionally, 20 C.F.R. 727 was supplanted by the more stringent standards contained in 20 C.F.R. 718. The amendments were explained as follows:
 
 
 27
 At present, survivors of miners who die while receiving black lung benefits or while totally disabled by the disease receive benefits without having to demonstrate a causal connection between the disease and death. This section would, with respect to claims filed on or after the enactment date of these amendments, limit survivors' entitlement to those cases where death resulted from black lung disease and not some unrelated event. Survivors of those miners who are curently [sic] receiving benefits, or who have filed for them, will not be affected by this change. These survivors will receive benefits even if the miner eventually dies from causes unrelated to black lung.
 
 
 28
 127 Cong.Rec. 29932 (1981) (Statement in Explanation of Black Lung Benefits And Revenue Amendments of 1981, introduced into the record).
 
 
 29
 The 1981 amendments changed the law in two ways: first, they made clear that a miner's survivor would now have to prove that the miner's death was caused by pneumoconiosis; second, they made explicit that the new evidentiary requirements would apply only to those miners or miners' survivors who filed claims after the 1981 amendments became effective. Those who had filed a claim prior to the 1981 amendments taking effect could still rely upon the old presumptions and regulations. Thus, Sec. 422(l) of the Act provides:
 
 
 30
 Filing of new claims or refiling or revalidation of claims of miners already determined eligible at time of death.
 
 
 31
 In no case shall the eligible survivors of a miner who was determined to be eligible to receive benefits under [the Black Lung Benefits Act] at the time of his or her death be required to file a new claim for benefits, or refile or otherwise revalidate the claim of such miner, except with respect to a claim filed under this part on or after the effective date of the Black Lung Benefits Amendments of 1981.[11]
 
 
 32
 The Director contends that while Sec. 422(l) prohibits OWCP from requiring a new filing for derivative disability claims, it does not prohibit such a requirement for claims based upon death due to pneumoconiosis. We find no basis for this distinction. While the only type of earlier claim a miner could have filed was one for disability, not one for his own death, the Act provides for both types of benefits. The plain meaning of Sec. 422(l) supports the conclusion that an eligible survivor need not file a new claim for either type of benefit.[12]
 
 
 33
 The clear import of Sec. 422(l) is that no miner or miner's family should be prejudiced by the 1981 amendments. If a miner filed a claim and was determined eligible to receive disability benefits, the pre-1981 rules apply. No further claim needs to be filed for either type of survivor's benefit and, indeed, there is no reason to require a new filing. Under the pre-1981 set of presumptions, once a miner with 10 or more years of coal mine employment was determined to have pneumoconiosis--a determination which would have been a prerequisite to a prior finding of eligibility for disability benefits--then, upon death, he was presumed to have died from pneumoconiosis. A survivor did not need to make a further showing of causation. Consequently, under the former set of presumptions, a new claim would not have been necessary to notify either a coal company or the OWCP of new issues to be contested. The Director's construction would permit the unfairness to miners' survivors which we believe Sec. 422(l) sought to prevent, because it would require the survivors of miners who had previously been determined eligible to receive disability benefits--and, thus, had relied upon the pre-1981 presumptions--to face a new evidentiary hurdle.
 
 
 34
 Therefore, we hold that under Sec. 422(l), if a miner had filed any claim and been determined eligible for benefits under the Black Lung Benefits Act, 30 U.S.C. Secs. 901-45, prior to the effective date of the 1981 amendments, no subsequent claim needs to be filed by him or by his survivors for either type of survivor's benefit under the Act, and that the pre-1981 presumptions and regulations apply to all subsequent benefits.[13] Consequently, because Mr. Pothering filed his original claim on May 23, 1978, it was unnecessary for Mrs. Pothering to file a new claim for benefits for Mr. Pothering's death due to pneumoconiosis.
 
 B.
 
 35
 Parkson also contends that, even if Mrs. Pothering properly lodged a claim for benefits based upon her husband's death due to pneumoconiosis, the Deputy Commissioner's failure to mail the August 21, 1984 letter to its counsel was a denial of proper notice and, consequently, the 30-day period in which to file a controversion never began to run. Parkson relies upon 20 C.F.R. 725.364, which provides that "[n]otice given to any party of any administrative action, determination, or decision ... shall be sent to the representative of such party." Additionally, petitioner points to Patton v. Director, OWCP, 763 F.2d 553 (3d Cir.1985), in which we ruled that failure to notify a claimant's lawyer of an adverse ruling by an ALJ tolled the 30-day period in which the claimant had to file her appeal with the Benefits Review Board.
 
 
 36
 In this case, we do not find that lack of notice to counsel deprived Parkson of due process or was prejudicial and, therefore, we think Patton inapposite. Patton involved a situation where the claimant's lawyer undeniably lacked knowledge of the ALJ's decision and had no basis from which he reasonably could have learned of the ALJ's decision. Here, in contrast, Parkson's attorney was in the middle of litigation involving the very subject of which he now claims a lack of knowledge. Indeed, the date for closing the record was extended so that the deposition of Mrs. Pothering could be taken because of Mr. Pothering's death. The ALJ's decision makes clear that the cause of Mr. Pothering's death was litigated before him. There is nothing in the record before us to indicate that Parkson ever objected to litigating the cause of death. We also note that Parkson did not file a motion for reconsideration following the ALJ's Decision and Order awarding survivor's benefits for death due to pneumoconiosis. In sum, the record of all events prior to the appeal to the Benefits Review Board indicates that Parkson's counsel knew a claim had been lodged for survivor's benefits and that those claims would be decided by the ALJ.
 
 
 37
 In reaching this conclusion, we find support in Wellman v. Director, OWCP, 706 F.2d 191 (6th Cir.1983), a case we explicitly contrasted in Patton. 763 F.2d at 558 n. 9. In Wellman, the United States Court of Appeals for the Sixth Circuit held that, while notice of the ALJ's adverse decision had not been sent to the claimant's attorney, the attorney had actual notice of the decision and, therefore, the defect in notice would not toll the 30-day period for filing an appeal. The same reasoning applies here. Having had actual knowledge of the Deputy Commissioner's decision to award survivor's benefits and having decided not to file a controversion, Parkson cannot now complain because the award became final 30 days later. Any other rule would place form above substance.
 
 C.
 
 38
 Given Parkson's decision not to file a controversion within 30 days, the Benefits Review Board properly ruled that the Deputy Commissioner's award of survivor's benefits to Mrs. Pothering automatically became final and, consequently, that the ALJ never attained jurisdiction over the claim. 20 C.F.R. Secs. 725.413(b)(3), 725.419(d).
 
 
 39
 Even if the Benefits Review Board had erred in its decision, we would nonetheless be compelled to uphold the award of benefits to Mrs. Pothering after conducting our own independent review of the ALJ's decision.[14] Hillibush v. United States Dept. of Labor, 853 F.2d 197, 202 (3d Cir.1988) (to determine whether the Benefits Review Board has properly adhered to its scope of review, the court should independently review the record and decide whether the ALJ's findings are supported by substantial evidence); Kertesz v. Crescent Hills Coal Co., 788 F.2d 158, 163 (3rd Cir.1986) (same). The ALJ's opinion makes clear that there was substantial medical evidence in the record that Mr. Pothering suffered from pneumoconiosis at the time of his death. Specifically, the ALJ pointed to the findings of Dr. Denis Bane, an internist who examined Mr. Pothering in 1979 (App. at 25), and the findings of Dr. Conrad, a board certified radiologist who was qualified as an expert and who read three separate x-rays of Mr. Pothering as positively showing pneumoconiosis. App. at 26. Under 20 C.F.R. Sec. 727.203(a), the ALJ's finding that Mr. Pothering had pneumoconiosis at the time of his death gave rise to a rebuttable presumption that he in fact died of pneumoconiosis. Additionally, the ALJ had before him a state vital statistics record which showed the cause of Mr. Pothering's death to be "anthracosilicosis" (i.e., "an accumulation of carbon and silica in the lungs from inhaled coal dust").[15] App. at 26. Thus, even without the presumption provided by 20 C.F.R. Sec. 727.203(a), there was sufficient evidence in the record for the ALJ properly to conclude that Mr. Pothering's death was caused by pneumoconiosis. See Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938) (substantial evidence " 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' ")).
 
 V.
 
 40
 For the reasons discussed above, we will affirm the order of the Benefits Review Board.
 
 
 41
 Costs taxed against the appellant.
 
 
 
 [1]
 Constitution State Service Company, a subsidiary of Travelers Insurance Company, is Parkson's insurance carrier
 
 
 [2]
 Because the copy of the actual letter transmitted by the Board to this court was illegible, and no better copy was available for inclusion in the appendix, Parkson provided a copy of the basic form letter from the Department's office in Wilkes-Barre, Pennsylvania. Mrs. Pothering has raised no objection to this substitution. We therefore rely on this form letter in reviewing the case
 
 
 [3]
 20 C.F.R. Sec. 725.212-.217 (1988) sets forth the conditions of relationship and dependency necessary for a surviving spouse to be considered eligible for benefits
 
 
 [4]
 20 C.F.R. 727.203(a) provides in part:
 (a) Establishing interim presumption. A miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis, or to have been totally disabled due to pneumoconiosis at the time of death, or death will be presumed to be due to pneumoconiosis, arising out of that employment, if one of the following medical requirements is met:
 (1) A chest roentgenogram (X-ray), biopsy, or autopsy establishes the existence of pneumoconiosis....
 It is undisputed that Mr. Pothering had engaged in coal mine employment for more than 10 years.
 
 
 [20]
 C.F.R. Sec. 727.203(b) provides, in part:
 (b) Rebuttal of interim presumption. In adjudicating a claim under this subpart, all relevant medical evidence shall be considered. The presumption in paragraph (a) of this section shall be rebutted if: ...
 (2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work....
 
 
 [20]
 C.F.R. Sec. 727.203(b)
 Claims filed on or before March 31, 1980, are adjudicated under the criteria found at 20 C.F.R. Part 727. 20 C.F.R. Sec. 727.2(d). Part 718 governs claims filed after that date. 20 C.F.R. Secs. 718.2, 725.4; Director, OWCP v. Mangifest, 826 F.2d 1318, 1320 (3d Cir.1987).
 
 
 [5]
 While the ALJ did have jurisdiction over the claim for survivor's benefits arising from Mr. Pothering's total disability, Mrs. Pothering has not challenged the denial of those benefits on appeal
 
 
 [6]
 See remarks of the Surgeon General, reproduced in H.R.Rep. No. 563, 91st Congress, 1st Sess. 15-17. See also Lopatto, The Federal Black Lung Program: a 1983 Primer, 85 W.Va.L.Rev. 677, 680 (Coal Issue 1983)
 
 
 [7]
 The Black Lung Benefits Act of 1972, Pub.L. No. 92-303, 86 Stat. 151
 
 
 [8]
 The 1978 amendment was joint legislation: the Black Lung Benefits Revenue Act of 1977, Pub.L. No. 95-227, 92 Stat. 11, and the Black Lung Benefits Reform Act of 1977, Pub.L. No. 95-239, 92 Stat. 95
 For example, Congress attacked an HEW regulation which precluded the taking of new evidence in certain claims after a bar date. The Senate Report made explicit its intent that the regulations be changed to allow more liberal treatment of miners' claims:
 As a rule, a disabled miner or widow does not have at his or her disposal a plethora of legal assistance to aid in the accumulation of all tests and documentation necessary for the determination of a claim when it is filed. The imposition of such an arbitrary and stern requirement on such claimants cannot be countenanced by this Committee, and to deny a claim which was filed by June 30, 1973 but not "effectively filed" until sometime after that date and before the final administrative determination of that eligibility is a perverse interpretation of the law which is cruel and unjust....
 The Committee expects that its clear expression of legislative intent herein will result in the modification of the regulations referred to, as well as a clarification of the law for the benefit of the courts.
 S.Rep. No. 209, 95th Cong., 1st Sess. 22-23.
 
 
 [9]
 See, e.g., comments on Sec. 411(c) contained in the Senate Report on the Black Lung Benefits Reform Act of 1977:
 Widows have perhaps been even more adversely and wrongfully affected by black lung claim denials than living miners, for in all too many instances the probative value of the widow's evidence submitted in support of a claim is not good. It is not her fault. Medical records may have been lost or destroyed. The miner may have been lost forever in an underground mine explosion. He may have died so long ago that clinical knowledge of the day did not include pneumoconiosis--the cause of death was simply attributed to "heart failure." For these and other reasons the Committee believes that concern for the welfare of these widows, whose husbands gave their physical strength, their bodies and their lives to this most difficult occupation, should override any professed need to demonstrate a clinically precise association between years worked and totally disabling lung disease. This provision, and others contained in the bill, give the benefit of the doubt to the miner's widow. Any burden is on the Secretary to show that the miner was not partially or totally disabled.
 S.Rep. No. 209, 95th Cong., 1st Sess. 18.
 
 
 [10]
 The Black Lung Benefits Revenue Act of 1981, Pub.L. No. 97-119, 95 Stat. 1635
 
 
 [11]
 Sec. 422(l) was originally adopted as part of the Black Lung Benefits Reform Act of 1977, supra note 8. In its original form, Sec. 422(l) prohibited the requirement of a new filing for any survivor of a miner who had been determined to be eligible to receive benefits. The Black Lung Benefits Amendments of 1981, supra note 10, added the language which now limits Sec. 422(l) to those claims filed before the 1981 amendments
 
 
 [12]
 Despite the Director's current position, neither the OWCP's regulations nor its forms provide for a distinction either. Indeed, the form which Mrs. Pothering filed was labeled "Survivor's Notification of Beneficiary's Death," while the form the Director contends she should have filed was simply labeled "Claim for Benefits Under the Black Lung Benefits Act." Having completed a form which appeared complete on its face and having received no other guidance from OWCP, Mrs. Pothering did all that was necessary to file her claims properly
 The Secretary, and those to whom he delegates his authority, have a duty to effectuate the policies of the Act, and that duty includes assisting a claimant in securing her rights fairly. See, e.g., Lloyd v. Mathews, 413 F.Supp. 1161, 1162 n. 1 (E.D.Pa.1976) (citing Hess v. Secretary of HEW, 497 F.2d 837 (3d Cir.1974)) ("The black lung benefits statute is avowedly remedial, and the Secretary is under a corresponding duty to effectuate the policy of the Act by, among other things, assisting the claimant where necessary in order to develop a meaningful and fair record."). Here, rather than effectuating the policy by providing guidance to Mrs. Pothering, the Secretary instead nearly frustrated that policy.
 
 
 [13]
 We do not read Sec. 422(l) as prohibiting filings for which there is an administrative need--such as providing the OWCP with notice of the miner's death or information regarding the survivor's relationship
 
 
 [14]
 Had the ALJ ever acquired jurisdiction through the filing of a timely controversion by Parkson, the issue of whether Mr. Pothering died from pneumoconiosis would have been properly raised before him by the Deputy Commissioner's August 21, 1984 letter, which stated that "the survivor(s) claim will be joined with the deceased miner's claim for resolution of the outstanding issues."
 Similarly, as Mr. Pothering filed his original claim on May 23, 1978, our prior discussion makes clear that the ALJ properly applied the standards of 20 C.F.R. 727.
 
 
 [15]
 The information contained in the state vital statistics record was certified to have been accurately taken from the death certificate. While the original death certificate was not in evidence, a point upon which Parkson has based its appeal, Parkson did not dispute before the ALJ the accuracy of the information. In any event, hearsay evidence is admissible in an administrative proceeding. Richardson v. Perales, 402 U.S. 389, 400, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); Evosevich v. Consolidation Coal Co., 789 F.2d 1021, 1025 (3rd Cir.1986)